IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARGARITA WILEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00934 |
| | ) | |
| | ) | |
| WALMART INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff, Margarita Wiley ("Wiley" or "Plaintiff"), through undersigned counsel, and files her Complaint and Demand for Jury Trial against Defendant, Walmart Inc., ("Walmart" or "Defendant"), and in support states as follows:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* ("ADA"); the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); and the Texas Commission on Human Rights Act, 1.3.3 Article 5221K, *et seq.* ("TCHR") to redress Defendant's unlawful employment practices against Plaintiff, including Defendant's discrimination and retaliation against Plaintiff due to her association with a disabled individual (her husband), its interference with her utilization of FMLA, and its retaliation against Plaintiff following her lawful exercise of her rights under the FMLA leading to her unlawful termination.

## JURISDICTION AND VENUE

2.	This Court has jurisdiction herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA and FMLA.

3.	This Court has supplemental jurisdiction over Plaintiff's related claims arising under the Texas Labor Code pursuant to 28 U.S.C. §1367.

4.	Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim, occurred in this District.

## THE PARTIES

5.	Plaintiff is a citizen of the United States, and is, and was at all times, material, a resident of the state of Texas, residing in Tarrant County.

6.	Defendant is a foreign limited liability company headquartered in Bentonville, Arkansas.

7.	Defendant does business in this judicial district and Plaintiff worked for Defendant at its Fulfillment Center property located at 5300 Westport Pkwy, Fort Worth, Texas, 76177.

8.	Defendant is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9.	Plaintiff has complied with all statutory prerequisites to filing this action.

10.	On August 20, 2019, Plaintiff dual-filed discrimination claims with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission – Civil Rights Division ("TWC"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e).

11. Plaintiff's discrimination charge was filed within the required amount of days after the alleged unlawful employment practices occurred.

12. On September 9, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue, upon request, against Defendant.

13. This complaint was filed within 90 days of issuance of the EEOC's Right to Sue letter.

## FACTUAL ALLEGATIONS

14. At all times relevant to this action, Plaintiff was a qualified individual whose husband had a disability within the meaning of the ADA. Plaintiff's husband has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

15. Plaintiff's husband suffers from issues in his spine including herniated disks which required lateral lumbar interbody fusion.

16. Plaintiff's husband had a serious medical condition as defined by the FMLA.

17. Plaintiff was employed by Defendant for approximately four years and four months as an Area Manager.

18. On or about March of 2018, Plaintiff applied for intermittent, protected medical leave under the FMLA to care for her husband's serious medical condition.

19. Defendant, through its third-party disability provider Sedgwick, approved Plaintiff's request for intermittent, protected medical leave under the FMLA for her husband's serious medical condition beginning on March 24, 2018.

20. Following Defendant's approval of Plaintiff's FMLA leave, she began to utilize FMLA leave as needed for her husband's serious health condition.

21. Plaintiff was typically scheduled to work three, twelve-hour shifts per week.

22. When Plaintiff missed time from work due to utilizing her approved intermittent FMLA leave, her duties were not covered in her absence.

23. Defendant made no attempt to assist with Plaintiff's workload when she was forced to miss work for her husband's disability. Additionally, Plaintiff's Co-Area Manager started treating her negatively and would intentionally provide her with incorrect information in order to interfere with her ability to do her job.

24. Plaintiff complained about the negative and discriminatory treatment she was receiving from her Co-Area Manager to her direct supervisor, Bobby Young (Operations Manager), and Courtney August (Human Resources Manager); however, no action was taken to address her complaints.

25. On or about July 14, 2018, Mr. Young placed Plaintiff on a Performance Improvement Plan (PIP). At that time, Plaintiff explained to Mr. Young that she was struggling to keep up with her duties because her husband's condition required her to use FMLA leave.

26. On or about July 14, 2018, Mr. Young granted Plaintiff permission to work from home.

27. On or about July 16, 2018, Ms. Wiley met with Ms. August and engaged in protected activity by informing her that the lack of coverage of Plaintiff's duties when using leave for her husband's condition caused unsustainable difficulties when it came to completing all of her job requirements and that she was already doing a lot of work from home.

28. In the same meeting, Ms. August instructed Plaintiff to read her emails before coming to work and stated, "If you can prep Friday night before you come in, you will have more of a game plan."

29. Plaintiff continued perform her job effectively and received positive feedback from Defendant's Assistant General Manager, Harrison Chalal.

30. Despite Plaintiff's positive performance feedback, Defendant did not remove the PIP and left Plaintiff on the plan for nearly seven months. Each time Plaintiff would meet the requirements of her PIP Defendant would add additional requirements.

31. On or about February 19, 2019, Plaintiff submitted a request to renew her intermittent FMLA leave for her husband's disability and she received confirmation of receipt of her request on February 22, 2019.

32. On February 21, 2019, Plaintiff met with John Gjertson and reiterated her protected complaints that the only reason she was put on a PIP in the first place was because assignments did not get completed on days that she was not there when she was off due to reasons covered under her FMLA. Plaintiff elaborated that the assignments were not even under her name.

33. Mr. Gjertson informed Plaintiff, "there is still an expectation to get the job done" even when she was out on protected medical leave.

34. Immediately thereafter, Mr. Gjertson created a new PIP for Plaintiff which contained five additional requirements and claimed they were not being met.

35. On February 24, 2019, Plaintiff received a text message from Cayla Gerton, a newly assigned Supervisor that Plaintiff had never spoken to, requesting Plaintiff call her.

36. When Plaintiff returned the call, Ms. Gerton informed her that she was being suspended for violating Defendant's Data Storage Policy for sending work emails to her home account.

37. Plaintiff informed Ms. Gerton that she had been transmitting documentation to her personal email for the duration of her employment and she had never had an issue and been told her actions were in violation of company policy.

38. Plaintiff had managerial permission to send information to her personal email address in compliance with Defendant's policy.

39. Defendant's policy on Protecting Personal & Business Information states, "If you believe you have confidential company information that needs to be shared outside the company, seek approval from your manager," and "do not access or collect such information unless necessary to perform your job and only as directed by your manager."

40. On March 8, 2019 Defendant terminated Plaintiff in retaliation for her repeated use of intermittent leave for her husband's disability, under the pretext of "gross misconduct" for sending communications to her personal email address.

41. In addition to the information outlined above, Plaintiff was subjected to negative comments about and following her leave including having her Area Manager tell her she was upset the Plaintiff could leave and use her FMLA leave when she needed to and told Plaintiff she would not be with the company much longer. Also, Mr. Gjertson made comments to Plaintiff that she was not being loyal to the company due to the amount of time she was taking off.

42. Plaintiff has been damaged by Defendant's illegal conduct.

43. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

**Count I: Disability Based Discrimination in Violation of the ADA**

44. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

45. At all times relevant to this action, Plaintiff was a qualified individual whose husband had a disability within the meaning of the ADA. Plaintiff's husband has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

46. Plaintiff was able to perform the essential functions of her job at the time of her unlawful termination.

47. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's husband's disability regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

48. Defendant violated the ADA by terminating and/or discriminating against Plaintiff based on her association and relationship with an individual with a disability.

49. Plaintiff has been damaged by Defendant's illegal conduct.

50. Defendant intentionally discriminated against Plaintiff based on her association with a disabled individual.

51. Defendant's discriminatory conduct in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

52. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

53. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's protected rights, thereby entitling her to punitive damages.

### Count II: Retaliation in Violation of the ADA

54. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.


55. Defendant intentionally retaliated against Plaintiff for engaging in protected activity and by unlawfully terminating her employment.

56. Defendant's conduct violates the ADA.

57. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

58. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

59. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## Count III: Interference in Violation of the FMLA

60. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

61. Plaintiff is a covered "employee" as defined by the FMLA because she worked for Defendant for more than 12 months preceding her leave, she had more than 1,250 hours of service during the 12 months preceding her leave, and she worked at a location where the employer has at least 50 employees within 75 miles.

62. At all times relevant, Defendant is and was a covered "employer" under the FMLA because it has more than 50 employees employed at Plaintiff's work location in 20 or more workweeks in the calendar year preceding Plaintiff's leave request.

63. The FMLA provides that an employer must provide an eligible employee intermittent leave to care for a spouse's serious medical condition.

64. Defendant interfered with Plaintiff's rights under the FMLA by pressuring Plaintiff to refrain from taking leave, failing to cover her duties when she was required to take leave, by

placing Plaintiff on a PIP, demanding that Plaintiff complete assignments while on FMLA leave, and ultimately its termination of her employment.

65. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

66. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

### Count IV: Retaliation in Violation of the FMLA

67. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

68. Plaintiff is a covered "employee" as defined by the FMLA because she worked for Defendant for more than 12 months preceding the leave, had more than 1,250 hours of service during the 12 months preceding the leave, and worked at a location where the employer has at least 50 employees within 75 miles.

69. At all times relevant to the case, Defendant is and was a covered "employer" under the FMLA because it has more than 50 employees employed at Plaintiff's work location in 20 or more workweeks in the calendar year preceding the leave request.

70. Plaintiff exercised or attempted to exercise her rights under the FMLA.

71. Defendant retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights.

72. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

73. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which Plaintiff is entitled to legal relief.

**Count V: Disability Based Discrimination in Violation of the TCHR**

74. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

75. At all times relevant to this action, Plaintiff was a qualified individual whose husband had a disability within the meaning of the TCHR. Plaintiff's husband has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

76. Plaintiff was able to perform the essential functions of her job at the time of her unlawful termination.

77. Defendant is prohibited under the TCHR from discriminating against Plaintiff because of her association with a disabled individual regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

78. Defendant violated the TCHR by terminating and discriminating against Plaintiff based on her association with a disabled individual.

79. Plaintiff has been damaged by Defendant's illegal conduct.

80. Defendant intentionally discriminated against Plaintiff on the basis of Plaintiff's association with a disabled individual.

81. Defendant's discriminatory conduct, in violation of the TCHR, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

82. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

83. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's protected rights, thereby entitling her to punitive damages.

### Count VI: Retaliation in Violation of the TCHR

84. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-43 above.

85. Defendant intentionally retaliated against Plaintiff for engaging in protected activity and by unlawfully terminating her employment.

86. Defendant's conduct violates the TCHR.

87. Defendant's discriminatory conduct, in violation of the TCHR, has caused Plaintiff to suffer a loss of pay, benefits, and prestige.

88. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling him to compensatory damages.

89. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's federally protected rights, thereby entitling him to punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

        Respectfully Submitted:

        /s/ Gabrielle Klepper
        Gabrielle Klepper
        Texas Bar Number: 24090213
        **Spielberger Law Group**
        4890 W. Kennedy Blvd., Suite 950
        Tampa, Florida 33609
        T: (800) 965-1570
        F: (866) 580-7499
        Gabrielle.Klepper@SpielbergerLawGroup.com

        *Counsel for Plaintiff*